UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20661-CR-PCH

UNITED STATES OF AMERICA,

    Plaintiffs

vs.

CARLOS CRUZ,
BRUCE MARTINEZ, and
ISRAEL ROQUE BORREGO,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on three CJA 20 vouchers submitted by defense counsel in this case. On April 14, 2011, these vouchers were referred to the undersigned for a Report and Recommendation as to the appropriateness of payment under 18 U.S.C. § 3006A. Accordingly, the undersigned conducted a hearing on these vouchers and inquired of defense counsel concerning the reasonableness of the amounts requested and the authorization for payment in excess of the statutory maximum amount for two of the three vouchers. Following full review of this matter, and in consideration of the requirements for payment under 18 U.S.C. §§ 3006A(d)(1) and (3), it is hereby

RECOMMENDED that the Court approve CJA Vouchers FLS 10 4 502, FLS 10 4503, and FLS 10 4504 in the full amounts requested in these vouchers.

## **ANALYSIS**

Title 18, United States Code, Section 3006A provides for the appointment of CJA counsel for eligible criminal defendants; and for payment of legal services provided by appointed counsel at the conclusion of such representation. Currently this statute allows a maximum hourly rate of $125.00 for both in court and out of court hours "reasonably expended" by appointed counsel in non-capital cases with a maximum amount of $9,700.00.[1] Section 3006A(d)(5) requires the appointed attorney to file a claim for compensation (using the CJA 20 form) supported by a sworn written statement specifying "the time expended, services provided, and expenses incurred while the case was pending" in the district court. Section 3006A(d)(3) provides for compensation in excess of this statutory maximum stating as follows:

> (3) payment in excess of the maximum amount... [$9,700.00]... may be made for **extended or complex representation** whenever the Court in which the representation was rendered, .... certifies that the amount of excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit (or his/her delegated representative) (emphasis added).

On May 12, 2011, the undersigned conducted a hearing with all three CJA counsel submitting the referred vouchers to determine the reasonableness of the hours expended by each attorney and, in the case of those claims exceeding the $9,700 maximum amount, whether such representation was for "extended or complex" representation as required for reimbursement under 18 U.S.C. § 3006A(d)(3).

---

[1] See sections 230.16(a) and 230.23.20 of the Guide to Judiciary Policy which sets these hourly rates and maximum amounts for felony representation after January 1, 2010.

A. <u>CJA Voucher FLS 10 4502 (submitted by Rafael J. Rodriguez, Esq.)</u>

FLS Voucher 10 4502, submitted by Rafael J. Rodriguez, Esq., seeks $10,450.00 in attorney's fees and $263.94 for travel and other expenses incurred in representing Israel Roque Borrego in this case. Mr. Rodriguez's CJA 20 form lists 3.70 hours in court time (for arraignment, pretrial detention hearing, change of plea and sentencing proceedings), and 83.60 hours for out of court time (for interviews and conferences with his client, family members and others, obtaining and reviewing records, legal research and brief writing, investigative and other work, and travel time) for which he seeks payment at the statutory hourly rate of $125.00 per hour. Mr. Rodriguez's claim for $10,450.00 in attorney's fees exceeds the statutory maximum by only $750.00 nevertheless triggering the requirement for approval by the Eleventh Circuit for "extended or complex" representation to justify full payment.

Mr. Rodriguez has submitted a letter to the Court along with his claim form explaining some detail his representation of Borrego and request for compensation above the statutory maximum. Mr. Rodriguez has also submitted a detailed billing record for his representation setting forth each and every legal service he performed by date, nature of the service provided, and the time spent for each service. Briefly summarizing these submissions, the undersigned finds that the bulk of Mr. Rodriguez's time was spend interviewing and conferring with Borrego, his wife and other family members, as well as the prosecuting attorney and government representatives (26.60 hours); and in obtaining and reviewing recorded telephone conversations and video-taped meetings involving Borrego which were provided by the government during discovery, as well as state court records relating to prior convictions of Borrego (30.60 hours). Mr. Rodriguez explained that

3

Borrego was charged in a multi-count indictment stemming from an alleged conspiracy to commit an armed robbery of cocaine from a stash house. Borrego faced life imprisonment if convicted due to his prior criminal record. The government's evidence consisting largely of recorded telephone conversations and video-taped meetings in which Borrego engaged in numerous conversations concerning his role in the charged offenses.

At the hearing, Mr. Rodriguez explained in greater detail the time necessary to review the government's discovery and recordings. Mr. Rodriguez explained that Borrego was the lead defendant in this reverse sting conspiracy; and that his voice was recorded in every taped conversation with the confidential informant. In total, the government provided 19 computer discs. of such conversations and about 316 pages of transcripts of recorded conversations. These conversations were in Spanish which Mr. Rodriguez could read directly. Still, this was a time consuming task requiring Mr. Rodriguez's personal attention to understand the incriminating nature of the recordings, formulate possible defenses, and verify the accuracy of the transcripts. Mr. Rodriguez also engaged in numerous conferences with Borrego, his wife and other family members, and later with the prosecution to discuss a cooperation agreement and plea recommendation to the Court. Mr. Rodriguez then spent time helping prepare Borrego as a government witness for trial which he described as a "tedious but necessary" process which, in his opinion, resulted in the guilty pleas by the co-defendants. Finally, Mr. Rodriguez spent considerable time carefully reviewing state court records to verify that Borrego was, in fact, a "career criminal" as classified by the government and in other preparations for sentencing including a twenty (20) page sentencing memorandum for the Court. This work, too, was time consuming but necessary and resulted in a sixteen (16) year sentence (on guidelines of 20 years to life)

which was extremely advantageous to Borrego and his family.

Reviewing Mr. Rodriguez's representation in this case, the undersigned finds that his 83.6 hours of attorney time was reasonably necessary under the circumstances of this case. While recognizing that this case did not proceed to trial, the undersigned specifically finds that Mr. Rodriguez's services constitute "extended" representation under 18 U.S.C. §3006 A(d)(3). Therefore, the undersigned recommends full payment of Mr. Rodriguez's voucher in the claimed amount of $11,176.46.[2]

### B. CJA Voucher FLS 10 4504 (submitted by Edward J. O'Donnell, IV)

Defense attorney Edward J. O'Donnell, IV represented defendant Bruce Martinez in this case. Mr. O'Donnell was appointed as CJA counsel on August 20, 2010, and represented Martinez through sentencing on January 5, 2011. Mr. O'Donnell has submitted a CJA voucher (FLS 10 4504) in the total amount of $15,035.94 representing 115.5 hours of attorney time (at $125.00 per hour) and $323.44 in expenses. Mr. O'Donnell spent the majority of his time (58.7 hours) obtaining and reviewing records (recorded conversations, state court criminal proceedings, and other matters) and 22.3 hours in interviews and conferences with his client, his family, the prosecution and potential witnesses. Mr. O'Donnell has submitted a brief written explanation as well as time records relating to his services in support of his voucher. In his written statement, Mr. O'Donnell summarizes his pretrial preparation which included the review of "20 CD/DVD's" of recorded meeting's and telephone conversations involving his client. These recordings

---

[2]Again, the undersigned notes that Mr. Rodriguez is claiming only $750.00 above the statutory maximum for attorney's fees together with costs of $263.50 which the undersigned also finds reasonable and necessary in this case.

were translated and transcribed by the government in original and several revised versions prior to trial. Mr. O'Donnell also spent time fully preparing the case for trial before his client decided to plead guilty just before the trial date. Mr. O'Donnell also spent time investigating and researching his client's criminal history to verify his career offender status and potential sentencing consequences.

At the hearing on this matter, Mr. O'Donnell explained in greater detail his representation of his client. Bruce Martinez was 18 years old at the time of the indictment but, despite his young age, appeared to qualify as a career offender facing a minimum mandatory sentence of 30 years. Mr. O"Donnell needed to personally investigate state court records to verify the career offender status, and, once confirmed, to carefully prepare a defense for trial. The government's evidence appeared strong against Martinez who was arrested with bullets and gloves in his pocket and a recorded conversation with a co-defendant in the back seat of a police car. Mr. O'Donnell carefully reviewed all recorded telephone conversations provided by the government to verify his client's role in the alleged conspiracy and to determine the accuracy of the transcripts. Mr. O'Donnell hoped to find conflicting statements by the co-defendants concerning Martinez's role who were expected to testify against Martinez at trial. Mr. O'Donnell also reviewed video recordings, investigative reports and other discovery provided by the government in an effort to defend his client on the basis of lack of knowledge of the actual conspiracy. Mr. O'Donnell also spent time interviewing potential witnesses, attending change of plea and sentencing hearings of the co-defendants, and in repeated reviews of revised transcripts provided by the government. Mr. O'Donnell met frequently with Martinez to review recordings at the FDC and later with the prosecution to negotiate a plea and sentencing recommendation

of 20 years. Martinez accepted this agreement and was sentenced by the Court pursuant to the recommendation.

Reviewing Mr. O'Donnell's work, the undersigned finds that he, too, provided "extended" representation in this case despite the eventual guilty plea of his client. Mr. O'Donnell was required to spend time reviewing extensive state court records and government discovery while facing changing events (pleas by co-defendants and revised transcripts) which altered his trial strategy. Mr. O'Donnell's time records and explanations to the Court convinced the undersigned that Mr. O'Donnell's time was necessarily expended in this case and resulted in a favorable outcome for his client considering the penalty he faced at the time of the arraignment. Thus, the undersigned recommends full payment of his CJA voucher even though it exceeds the statutory maximum by $4,737.50.

### C. CJA Voucher FLS 10 4503 (submitted by Joseph A. Chambrot)

Mr. Chambrot represented Carlos Cruz in this case and has submitted a CJA voucher seeking $4,812.50 for 38.5 hours of attorney time. Mr. Chambrot's voucher lists 19.4 hours for interviewed and conferences, and 14.8 hours for obtaining and reviewing records provided by the government in this case. Mr. Chambrot also spent four hours of in court time for arraignment, pretrial detention hearing and sentencing proceedings. Mr. Chambrot's voucher amount is well below the statutory maximum and does not need Eleventh Circuit approval.

Mr. Chambrot has submitted a detailed billing record describing his services on a chronological basis. Mr. Chambrot explained at the hearing that his client was in a "separate and distinct" position from his co-defendants in that he was directly linked to a sawed off Shotgun, bulletproof vest and other incriminating evidence. Mr. Chambrot met

with Cruz on several occasions and they together determined that Cruz should plead guilty should an acceptable agreement be made with the prosecution. Mr. Chambrot still had to review the recorded conversations and meetings involving his client to be sure the evidence actually implicated Cruz sufficient to enter a plea of guilty. Mr. Chambrot met with Cruz at the FDC (a "time consuming" procedure) and also with family members to explain the minimum mandatory sentencing guidelines and other matters. Mr. Chambrot also verified his client's criminal record to determine the sentencing range under the guidelines and to negotiate a plea and sentencing recommendation with the prosecution. In summary, Mr. Chambrot performed all necessary services for his client while recognizing that Cruz would likely plead guilty. Thus, the undersigned finds that Mr. Chambrot's hours were all necessary and reasonably expended so that his CJA voucher should be approved in the amount claimed ($5,348.50).

## SUMMARY

In summary, the undersigned finds that all three vouchers of the court appointed attorneys are based on reasonable and necessary legal services for their clients in this case. The undersigned further finds that the claimed amounts in excess of the statutory maximum by Mr. Rodriguez and Mr. O'Donnell were for "extended" representation in view of the work necessary in this case. Thus, the undersigned specifically recommends:

a. that CJA Voucher FLS 10 4502 submitted by Rafael J. Rodriguez, Esq., in the total amount of $11,176.46 be approved and certified to the Eleventh Circuit for full payment of the excess amount,

b. That CJA Voucher FLS 10 4504 submitted by Edward J. O'Donnell, IV in the total

amount of $15,035.94 be approved and certified to the Eleventh Circuit for full payment of the excess amount; and

   c. That CJA Voucher FLS 10 4503 submitted by Joseph A. Chambrot be approved in its entirety with the finding that all time expended by Mr. Chambrot was reasonable and necessary in this case.

   RECOMMENDED this 23rd day of May, 2011.

                                        _____
                                        Ted E. Bandstra
                                        United States Magistrate Judge

Copies furnished to:

Honorable Paul C. Huck
All counsel of record